**Kos Jury Awards $ 119 Million**
**Diocese Found Grossly Negligent**
**Sex Abuse Judgment Largest of Its Kind**

By Ed Housewright and Brooks Egerton
Dallas Morning News
July 25, 1997

Jurors awarded 11 plaintiffs in a sexual-abuse civil case $ 119.6 million Thursday after unanimously finding that the Dallas Catholic Diocese committed "gross negligence" and concealed information in its handling of former priest Rudolph "Rudy" Kos.

The verdict, which includes $ 18 million in punitive damages against the diocese, is the largest judgment ever in a clergy sexual molestation case in the country.

The diocese's attorney, Randal Mathis, vowed to appeal the verdict to the U.S. Supreme Court, if necessary, although he told the jury, "There's absolutely no doubt the diocese received your message very, very clearly."

Windle Turley, who represented eight of the plaintiffs during the 11-week trial, said, "We asked this jury to speak to the world, and they have done that."

"This verdict gives a clear voice to the conscience of our community about the sexual abuse of children," said Sylvia Demarest, who represented the other three plaintiffs.

In a resounding defeat for the Dallas Diocese, the jury of 10 women and two men answered all the questions in its charge in favor of the plaintiffs. Mr. Kos was found partly responsible for injuries to the plaintiffs, but the jury apportioned the majority of responsibility to the diocese.

Jurors asked state District Judge Anne Ashby to read in open court a statement in which they admonished the diocese. Noting "the child is of the utmost importance," the jurors urged the diocese to institute stricter rules to protect children from sexual abuse.

"Please admit your guilt and allow these young men to get on with their lives," the jurors wrote. The courtroom, filled with the plaintiffs, their families and friends, erupted in a 30-second standing ovation.

Jurors expressed disappointment that Bishop Charles Grahmann, who became head of the diocese in 1990, did not stay to hear the judge read their statement. While they were composing it, the bishop read his own statement in an adjoining courtroom, then left after taking no questions from reporters.

"The Diocese of Dallas remains committed to abiding by the final outcome of this case," said Bishop Grahmann in a prepared statement. "Even though the judicial process will continue, we assure all victims, including the parties in this case, that we will continue our assistance of therapy and counseling. "It is important for everyone to understand that the diocese is committed to helping and healing its people."

Among the jury's findings were that the diocese committed fraud and engaged in a conspiracy to cover up the sexual abuse. Jurors also found that sexual abuse by Mr. Kos and the diocese's negligence were the "proximate cause" of the suicide of a young man.

"He was murdered by the Dallas Diocese because they let Father Rudy Kos into their little regime, and he got away with it," said Pat Lemberger of Nacogdoches, Texas, whose 21-year-old son, Jay Lemberger, shot himself in 1992.

Mr. Mathis never questioned during the trial that Mr. Kos sexually abused boys at All Saints Catholic Church in North Dallas, St. Luke's church in Irving and St. John's church in Ennis from 1981 to 1992. Most of the abuse, which began with foot massages, occurred during overnight stays in Mr. Kos' rectory room.

But Mr. Mathis argued that the diocese should not be found liable for Mr. Kos' behavior because it investigated suspicions about his behavior with boys and concluded that sexual abuse was not occurring. He also pointed out that the diocese removed Mr. Kos as soon as the first youth complained of sexual abuse in 1992.

The 52-year-old Mr. Kos, who is a free-lance paralegal in San Diego, never attended the trial, although he sent a letter to Bishop Grahmann last month in which he chided the diocese for not supporting him financially and denied the sexual abuse allegations.

Mr. Kos, who has been living under an assumed name, could not be reached for comment Thursday evening. In a previous interview with The Dallas Morning News , he said he had overcome his attraction to boys through intensive therapy but couldn't discuss "which ones I had sex with."

He said he was sorry "for anything I may have done" and would say Mass again if given the chance. At present, he is barred from performing priestly duties.

At the beginning of the trial, Judge Ashby ruled that Mr. Kos was liable for the abuse because he never responded to the lawsuits. He faces a criminal trial on related charges, perhaps this year.

After the verdict, Mr. Mathis said the case is "replete with constitutional issues." He said that most of the plaintiffs violated the statute of limitations by filing their lawsuits too late.

Mr. Turley and Ms. Demarest expressed confidence that the verdict would be upheld on appeal, which they said could take up to four years.

The only church official present for the jury's statement was Monsignor John Bell, who sat at the defense table with the diocese's lawyers.

Asked afterward whether the church would admit guilt, he replied: "I don't know how to answer that question. . . . I don't know what admit your guilt' is." The term implies criminal wrongdoing rather than the civil liability that was at issue in the trial, he said.

As for the jury's request for policy changes to prevent further abuses, he said that the diocese had already enacted or was in the process of implementing them.

The jury, in answering the questions on the charge, assigned a percentage of responsibility to the diocese for the abuse of each of the plaintiffs.

The diocese was found 80 or 85 percent liable for most of the plaintiffs, with Mr. Kos being found liable for the remainder. The lowest percentage of liability for the church - 50 percent - was for Jim Sibert, who lived with Mr. Kos for three years in a rectory under the guise of being adopted.

Still, the diocese is liable for the entire jury award under the concept of "joint and several" liability, Mr. Turley said.

Mr. Turley and the other attorneys would not discuss their own compensation. Plaintiffs had sought $ 146.5 million in actual and punitive damages. The jury, which included two former Catholics, awarded $ 101.6 million in actual damages. The damages, including punitive, will earn interest at the rate of 10 percent a year for the four years since the first lawsuit was filed. The actual damages for each plaintiff were as high as $ 300,000 in future medical expenses, $2 million in lost future earnings and $ 4.8 million in future "mental anguish."

"I hope now the victims around the world will obtain the courage and strength to come forward," said plaintiff Shawn Johnson, 29, of Plano, at a news conference where plaintiffs embraced. "We know the shame, guilt and embarrassment. But know this as well: You are not alone."

Lee Hart, 28, said he didn't think he could return to the Catholic church "after all that came out in the trial." Most of the plaintiffs didn't know each other before the trial but said they became close friends after they heard - often for the first time - others' similar accounts of sexual abuse during the trial.

Many said during the trial that they had lost their faith because of the abuse and the way it was handled by the diocese.

"One of the deepest voids I have now is not having a spiritual outlet," said Mr. Hart, who now lives near Detroit. "Nothing can make up for what happened."

The jury's verdict on actual damages was read by Judge Ashby at 1:45 p.m. Thursday. Jurors then heard an hour of testimony about the diocese's finances before considering whether to award punitive damages.

After sometimes hostile questioning of the diocese's chief financial officer, Mr. Turley told jurors that the diocese had assets of at least $ 290 million, although he said it was impossible to pin down exactly how much.

"You need to all pull together with a little more courage and do the thing that needs to be done," Mr. Turley said in arguing for punitive damages. "Speak to the people of Ireland, speak to Rome, speak to New York City, speak to Seattle - wherever people are exposed to sexual abuse by pastors or priests."

Mr. Mathis then asked, in a voice so quiet that it could barely be heard by the packed courtroom of about 60 people, that the jury not award any punitive damages. He disputed the asset figure given by Mr. Turley. "As you can imagine,

I really don't know what to say," Mr. Mathis said. "Everybody here is under a great deal of strain."

Throughout the trial's often dramatic testimony, the plaintiffs' lawyers argued that church officials ignored "a mountain of evidence" that indicated Mr. Kos was sexually abusing boys.

The Rev. Tom Economus, who has tracked clergy-abuse cases around the country, said the Dallas judgment is the largest of its kind. He said there were no other verdicts or out-of-court settlements that went much beyond $12 million.

Father Economus estimates that Catholic dioceses have paid out $650 million in settlements since the mid-1980s, when the first such scandal hit the courts. That case, in Lafayette, La., ended with more than $10 million in payments and the accused priest being sent to prison. Since then, hundreds of similar cases have come to light. Settling ones that are still pending could easily push the payout total over $1 billion, Father Economus said.

"Nobody ever wants to go to court," said the priest, who is active in the breakaway Reform Catholic movement and heads a Chicago-based national organization of clergy-abuse survivors called The Linkup. "It's the last alternative we have."

Father Economus helped found The Linkup several years ago as he tried to come to terms with being molested as a child by a priest at a South Dakota boys school. A federal lawsuit against the school could come to trial in September; the priest has since died in the crash of a small plane he was piloting while drunk, he said. Most such suits are settled out of court because plaintiffs' evidence is so strong, Father Economus said. For that reason, he said, he's shocked that a jury got to hear the Dallas case. "I've seen a lot less messy ones and they've never made it to trial," the priest said. "Of the cases that have gone to trial, this really goes far beyond what we've seen" in terms of embarrassing revelations, he said. "It shows the entire conspiracy of the Roman Catholic Church, which goes far beyond the Dallas Diocese."

A lawyer for Lloyd's of London, which insures the Dallas Diocese and many others, echoed Father Economus' remarks. "We always try to not have the cases go to trial," said the Chicago attorney, Richard F. Johnson. "The ones that go to trial have usually ended badly."

Mr. Johnson said he has seen a pattern of misbehavior among church officials: "They would learn of a priest having these tendencies and reassign him." Thus, when further abuse occurred, "it was not something unexpected," and insurers would refuse to pay. Church leaders seemed far more concerned with avoiding scandal than protecting children, he said.

"Their main concern in the earlier years was God forbid anyone should know,' " Mr. Johnson said. And where dioceses have cracked down and begun screening prospective clergymen more strictly, it's largely "because of what they were seeing about themselves in the paper."

The plaintiffs' attorneys introduced evidence about alleged sexual abuse by other Dallas Diocese priests during the trial.

Robert Peebles, who served with Mr. Kos at All Saints church in 1981 and 1982, has admitted in a deposition that he sexually abused seven boys.

William Hughes is accused of sexually abusing a 13-year-old girl at St. Luke's church, shortly before Mr. Kos was transferred there in the mid-1980s.

Mr. Turley has estimated that Mr. Kos, who plied boys with alcohol and drugs, may have sexually abused as many as 50 boys.

[Staff writers Tracy Everbach and Christine Wicker contributed to this report.]